IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALEXIS MOJICA, VIDAMARIS ZAYAS-VELAZQUEZ, and the MOJICA-ZAYAS CONJUGAL PARTNERSHIP,<br><br>**Plaintiffs,**<br><br>v.<br><br>CENTRO DE RECAUDACIONES DE IMPUESTOS MUNICIPALES and INSURANCE COMPANY XYZ,<br><br>**Defendants.** | **CIVIL NO. 23-1309 (RAM)** |

<u>OPINION AND ORDER[1]</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Centro de Recaudaciones de Impuestos Municipales' ("CRIM" or "Defendant") *Motion to Dismiss Under Rule 12(b)(6)* (the "*Motion to Dismiss*"). (Docket No. 17). For the reasons below, Defendant's *Motion to Dismiss* is **GRANTED.**

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On August 24, 2023, Plaintiff[2] Alexis Mojica-Rodriguez ("Plaintiff" or "Mr. Mojica") filed an *Amended Complaint* (Docket

---

[1] Elizabeth VanKammen, a rising 2L at UVA Law, assisted in the preparation of this Opinion and Order.

[2] Mr. Mojica is joined in the *Complaint* and the *Amended Complaint* by his wife, Vidamaris Zayas-Velasquez, and the Mojica-Zayas Conjugal Partnership. For ease of reference, the Court uses the term Plaintiff to refer to Mr. Mojica specifically and to refer to his position, which is shared with his co-plaintiffs.

No. 4) against CRIM alleging the Defendant violated: (1) Title VII
of the Civil Rights Act; (2) the Americans with Disabilities Act
("ADA"); (3) section 1983 of the Civil Rights Act; (4) Puerto Rico
Law 100; (5) Puerto Rico Law 44; (6) Puerto Rico Law 115; and (7)
Puerto Rico Law 69. (Docket No. 4 at 1-2).

Plaintiff states he has been employed by CRIM since 1998. Id.
¶ 8. From 2009 to 2011, he served as CRIM's Property Supervisor
for the Humacao Region. Id. ¶ 16. Since October 14, 2014, Mr.
Mojica has received ongoing psychiatric treatment. Id. ¶ 12. In
2015, he was unable to work due to an unspecified mental illness
and went on unpaid sick leave at the recommendation of his
psychiatrist. Id. ¶ 13. Mr. Mojica returned to work at CRIM in
2016 as a Valuation Specialist III. Id. ¶ 14. Plaintiff alleges
that in October 2018, CRIM's Regional Administrator, Ms. Stephanie
López-Aponte ("Ms. López") offered him the Property Supervisor
position he had previously occupied from 2009-2011, and he
accepted. Id. ¶¶ 15-17. Between 2018 and 2020, Mr. Mojica was
appointed Interim Regional Administrator of CRIM's Humacao
Regional Office on different occasions, the last being from October
to December of 2020. Id. ¶ 18.

Plaintiff claims Ms. López "began to make sexual and
unwelcomed advances" toward him in 2021, with three specific
instances of harassment taking place in February, March, and
October of that year. Id. ¶¶ 19-22. These advances included Ms.

López making sexual comments to Mr. Mojica, complimenting him, invading his personal space, and presenting herself to him in a sexual manner. Id. ¶¶ 20-24. Plaintiff alleges that once Ms. López realized he did not appreciate the sexual advances, "she started to criticize Mr. Mojica's [w]ork and admonished him." Id. ¶ 25.

After receiving a summons for a meeting with CRIM's Human Resources Manager, Mr. Omar Rivera ("Mr. Rivera"), on November 4, 2021, Plaintiff filed a formal sexual harassment complaint against Ms. López. Id. ¶ 28. At the meeting, Ms. Maria Paris ("Ms. Paris") "began to read out loud Mr. Mojica's complaint, [an] action that exacerbated Mr. Mojica's mental illness and [he] started to feel anxious, tense and finally started to cry in front of the Human Resources manager." Id. ¶ 29. Following the meeting, Plaintiff notified Mr. Rivera that he needed to take the afternoon off as sick leave, and after exiting the office called and met with his psychiatrist. Id. ¶¶ 30-31. Mr. Mojica's psychiatrist performed an evaluation and recommended "a partial psychiatric hospitalization." Id. ¶ 32.

While Mr. Mojica was on sick leave, he received emails from CRIM employees summoning him to a meeting with Mr. Rivera. Id. ¶ 33. On November 5, 2021, he called Ms. Paris to ask why he was receiving emails while he was on sick leave. Id. ¶¶ 34-35. Five days later, Ms. Paris asked Plaintiff when he would return from sick leave "to initiate the sexual harassment complaint against

Ms. López." Id. ¶ 37. On November 11, 2021, Mr. Mojica was admitted at the San Juan Capestrano Psychiatric Hospital under his psychiatrist's orders that he not return to work until November 26, 2021. Id. ¶¶ 38-39.

After returning to work on November 29, 2021, Plaintiff was interviewed by the CRIM Human Resources Department and notified that he would be reassigned to the CRIM office in Caguas. Id. ¶¶ 41-42. After discussing the relocation, Mr. Mojica was sent by Mr. Rivera and Ms. Paris to work from home until December 23, 2021. Id. ¶¶ 42-43. Following the CRIM holiday recess, Plaintiff returned to the office on January 10, 2022. Id. ¶¶ 44-45. That day, Ms. Paris "told Mr. Mojica that he should have called her prior to returning to the office and asked him to leave," later providing him with written instructions that he "continue to work from home until further notice." Id. ¶¶ 46-47. On January 13, 2022, Plaintiff received an email notifying him he had been referred for a medical evaluation with Astrid Gandarilla ("Dr. Gandarilla"), a psychologist, and Juan Rodriguez Velez, MD, a psychiatrist. Id. ¶ 48. Shortly afterward, Ms. López became the Regional Director at the Humacao Office on January 25, 2022. Id. ¶ 58.

On February 14, 2022, Plaintiff received an email inviting him to a meeting to discuss the findings of his Sexual Harassment Complaint, during which it was determined he had not been sexually harassed by Ms. López, and the case was closed. (Docket No. 4 ¶

54). A little over one week later, Mr. Mojica was referred to a second psychological evaluation with Dr. Gandarilla. Id. ¶ 56.

On April 20, 2022, Plaintiff was informed he would be demoted from the supervisor position and "no longer receive the $250.00 differential payment" as a result. Id. ¶ 57. Mr. Mojica alleges that on May 2, 2022, Ms. López entered his cubicle, touched his back, and asked if he wanted cookies. Id. ¶ 59. Later that month, Plaintiff sent an email to Ms. Paris seeking an update on his medical evaluations and requesting that the Human Resources Department instruct Ms. López to stay away from him. Id. ¶ 60.

Defendant filed the present "*Motion to Dismiss*" on October 26, 2023, claiming: (1) Plaintiff has failed to state a claim under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States because he has not been deprived of a recognized protected property interest; (2) Plaintiff does not allege he suffered an adverse action because of his disability, therefore failing to adequately state an ADA claim, and; (3) The Puerto Rico Anti-Discrimination Act ("Law 100") does not apply to Defendant insofar as it is a municipal agency. (Docket No. 17).

On November 11, 2023, Plaintiff filed a *Response in Opposition* ("*Response*"). (Docket No. 22). The *Response* states "[t]he Plaintiffs respectfully request this Court [] allow them to voluntarily desist to their Due Process and Section 1983 claims," conceding Mr. Mojica was not terminated from his employment, only

demoted. Id. at 1. Plaintiff disputes Defendant's argument that
the facts in the *Amended Complaint* show he is unable to work at
all, and therefore is not a qualified individual as required by
the statute. Id. at 7. Finally, Mr. Mojica asserts Defendant is
not a municipality as defined in the Municipal Code of Puerto Rico
and is therefore liable to suit as an employer in violation of Law
100. Id. at 10.

On December 18, 2023, Defendant filed a *Reply*. (Docket No.
25). In it, CRIM re-asserts its arguments that Plaintiff cannot
establish constitutional claims alleging violation of due process
or equal protection. Id. at 3. CRIM also reiterates that Plaintiff
is not a qualified individual as required by the ADA, and even if
he is, the remaining two factors for an ADA claim cannot be
satisfied because there is no causal connection between his
purported disability and the demotion. Id. at 4. Finally, Defendant
defines CRIM's role to show that it is not an agency or
instrumentality that operates as a private business as required
for Law 100 to apply. Id. at 5.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint
that "fails to state a claim upon which relief can be granted."
Under Rule 12(b)(6), a plaintiff must plead enough facts to state
a claim that is "plausible" on its face, and the "[f]actual
allegations must be enough to raise a right to relief above the

speculative level, […] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory factual allegations as true. See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013); Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013).

## III. DISCUSSION

Plaintiff's Response states that he requests "to **voluntarily desist** to [the plaintiffs'] Due Process and Section 1983 claims." (Docket No. 22 at 5) (emphasis added). However, the title of the section of the filing also contains the language "[t]his should not dismiss plaintiffs'" due process, equal protection, and section 983 claims. Id. Defendant reads Plaintiff's argument as requesting voluntary dismissal of his due process, equal protection, and section 1983 claims, (Docket No. 25 at 2), and Mr.

Mojica does not contend otherwise. The Court, too, considers the phrasing in Plaintiff's *Response* as a request for voluntary dismissal of these three claims, and the *Motion to Dismiss* should accordingly be granted as to the due process, equal protection, and section 1983 causes of action. However, out of an abundance of caution, the Court further assesses each claim as if Plaintiff had not sought voluntarily dismissal.

### A. Plaintiff Failed to State a Claim for Violation of Due Process

The Fourteenth Amendment Due Process clause prohibits states—and, as relevant here, the Commonwealth of Puerto Rico—from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Fourteenth Amendment property interests "may take many forms," including an interest in employment. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972); *see also* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (regarding government employees' interest in continued public employment). Pursuant to First Circuit precedent and "[u]nder Puerto Rico law, public employees have a property interest **in their continued employment, not in the functions they perform**." Ruiz-Casillas v. Camacho Morales, 415 F.3d 127, 134 (1st Cir. 2005) (emphasis added). 42 U.S.C. § 1983 provides individuals with a right to civil action against anyone who deprives them of "any rights, privileges, or immunities secured

by the Constitution and laws." To establish a prima facie due process violation, a plaintiff must assert: "(1) [he] was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 11 (1st Cir. 2013) (citations omitted). Mr. Mojica adequately pled the first element but not the second.

> i.  Plaintiff Properly Alleged a Property Interest in His Salary

In the instant case, Plaintiff properly alleged he had a protected property interest in his salary. Defendant contends that Puerto Rico law does not create a property interest in the functions employees perform or the salaries that come with an employment position, so a demotion cannot constitute a protected property interest as required to establish a due process claim. (Docket No. 17 at 6-7). However, the authority cited by CRIM in support of this proposition is inapposite.

For example, CRIM cites Morales-Santiago v. Hernandez-Perez, 488 F.3d 465, 471-72 (1st Cir. 2007), for the proposition that "employees do not have a property interest in a reduced salary." See (Docket No. 17 at 6). However, Morales-Santiago addresses salaries that were cut back because they were illegally awarded in the first place. 488 F.3d at 471-72 ("Puerto Rico law does not recognize a property interest in salaries paid to government

employees that are illegally awarded."). The First Circuit has not, therefore, held that a salary is an unprotected property interest. What cases are available suggest the opposite. *See, e.g.*, Ramos-Santos v. Hernandez-Nogueras, 867 F. Supp. 2d 235, 272 (D.P.R. 2012) (finding "**it is plausible** that [the plaintiff] was deprived of her right to continued employment **if her salary was reduced when she was removed from her position and demoted to a lower position**" and "[g]enerally, a demotion is considered to be a deprivation of a public employee's property interest in continued employment").

Plaintiff alleges he was demoted and was deprived of a $250.00 differential payment. (Docket No. 4 ¶¶ 57, 85-86). Thus, Mr. Mojica has sufficiently alleged his salary was reduced as a result of a demotion, thereby constituting a deprivation and satisfactorily pleading the first element of the due process claim. Id.

> ii. <u>Plaintiff Failed to Allege Inadequate Procedures Depriving Him of His Property Interest</u>

However, Mr. Mojica failed to plead that the process through which he was demoted was inadequate. Although CRIM did not raise this argument in its *Motion to Dismiss*, alleging that process was inadequate is essential to a Fourteenth Amendment Due Process claim. Beyond asserting facts plausibly alleging a deprivation of a protected property interest, a plaintiff must also plead that "the defendants, acting under color of state law, deprived it of

that property interest without constitutionally adequate process."
Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007)
(citation omitted). Courts have held that adequate process
requires "notice and a hearing prior to the termination of their
employment." Febus-Cruz v. Sauri-Santiago, 652 F. Supp. 2d 140,
151 (D.P.R. 2009) (citing Loudermill, 470 U.S. at 542-44). To
satisfy the pleading requirements, courts in this district have
required plaintiffs to file detailed pleadings. For example, a
plaintiff cannot fail to specify how defendants provided
inadequate process prior to a demotion without risking dismissal.
See Ramos-Santos, 867 F. Supp. 2d at 273 n.24 ("the only allegation
with respect to due process is conclusory, namely, that
'[d]efendants, through their acts and/or omissions, acting under
color of law, deprived plaintiff of her rights to
. . . due process of law.'").

Plaintiff's statements in the *Amended Complaint* amount to no
more than conclusory allegations that he was neither given notice
of the demotion nor opportunity to be heard. (Docket No. 4 ¶ 88-
89). There are no additional allegations explaining **how** Mr. Mojica
was deprived of his rights to due process of law; thus, the
pleading is conclusory. Because Plaintiff has not adequately pled
all elements of the due process claim, the *Motion to Dismiss* is
**GRANTED** as to this claim.

**B. Plaintiff Failed to State a Claim for Violation of Equal Protection Clause**

Under First Circuit precedent, a "requirement for stating a valid disparate treatment claim under the Fourteenth Amendment is that the plaintiff make a plausible showing that he or she was treated differently from others similarly situated . . .. A similarly situated person is one that is 'roughly equivalent' to the plaintiff 'in all relevant respects.'" Estate of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir. 2008) (citations and internal quotations omitted). Accordingly, at the pleadings stage, other courts in this district have often required a statement describing how the employer's treatment of the plaintiff differed from the way the plaintiff had previously been treated or their coworkers were treated by the employer. *See* Mulero Abreau v. Oquendo-Rivera, 729 F. Supp. 2d 498, 523 (D.P.R. 2010) (holding the plaintiff alleged sufficient facts to survive a 12(b)(6) motion by describing differential application of employment procedures to her as compared to others).

Here, Plaintiff failed to state anyone else was in a similar position to himself and received differential treatment. Although he claims he "was substituted and/or replaced by an employee with lesser qualifications, education, experience and rank" after his demotion, there are no additional non-conclusory details supporting these statements. (Docket No. 4 ¶¶ 69(c)-(d)).

Plaintiff does not describe how his qualifications were better than those held by the individual who replaced him. Nor does Mr. Mojica state that similarly situated persons have been treated differently regarding medical evaluations. Id. ¶ 69(a). Thus, Plaintiff inadequately pled the equal protection claim, and the *Motion to Dismiss* is **GRANTED** as to this claim.

### C. Plaintiff Failed to State a Claim for Discrimination in Violation of the ADA

Plaintiff states as his second cause of action that CRIM violated the ADA insofar as his employer "discriminated against the Plaintiff, by submitting him to multiple psychological and psychiatric evaluation[s] right after the filing of the Sexual Harassment complaint against Ms. Stephanie López-Aponte (harasser)." (Docket No. 4 ¶ 79(c)).

The relevant provision in the ADA, 42 U.S.C. § 12102(1)(A)-(C), defines 'disability' as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." The statute further provides that:

> An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

Id. § 12102(3).

29 U.S.C. § 794(a) prohibits conduct whereby an "otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" A 'qualified individual' is elsewhere defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To state a claim under the ADA for discrimination, a plaintiff must plead facts showing: "(1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability." Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 48 (1st Cir. 2011).

While Mr. Mojica has adequately stated facts satisfying the first prong, he has failed to show he is a qualified individual as required by the ADA, and he has also failed to allege a causal connection between his disability and the adverse action taken

against him by CRIM. For these reasons, the *Motion to Dismiss* is therefore **GRANTED** as to the ADA claim.

i.   <u>Plaintiff Sufficiently Alleged He Has a Disability within the Meaning of the ADA</u>

Under 42 U.S.C. § 12102(A), if a plaintiff has "a physical or mental impairment that substantially limits one or more major life activities of such individual," they have a disability in compliance with the ADA. The Equal Employment Opportunity Commission has defined 'physical or mental impairment' to include: "[a]ny mental or psychological disorder." 29 C.F.R. § 1630.2(h)(2). A plaintiff may also show he has a disability in compliance with the ADA under 42 U.S.C. § 12102(B) if he alleges facts showing "a record of such impairment." For the purposes of 42 U.S.C. § 12102(C), "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Plaintiff alleges both that CRIM knew he suffers from a mental disability and there is a disability record before the employer. Plaintiff only provides facts satisfactorily alleging the former,

not the latter, but this is all that is required to plead the first element of the ADA claim.

Plaintiff's *Amended Complaint* states that he "suffers from a mental disability known to defendant employer," and this disability "impairs his ability to think, process thoughts, [and] express himself." (Docket No. 4 ¶¶ 76 and 79(a)). Mr. Mojica states he has received ongoing psychiatric treatment for this disability since 2014 and went on unpaid sick leave for a year because of his mental illness in 2015. Id. ¶¶ 12-13.

Under 29 U.S.C. § 1630.2(i)(1)(i), major life activities may include, among other things, "concentrating, thinking, communicating, interacting with others, and working[.]" Mr. Mojica's allegations are accordingly sufficient to satisfy the pleading requirements, as his description of ongoing treatment and the impact of his mental disability on his ability to work at times makes it plausible he has a qualifying disability that substantially impairs a major life activity.

Since the Court has already found that Plaintiff adequately alleged that he had a disability that substantially impairs a major life activity, there is no need to address whether there is a "record of" the impairment.

### ii.  Plaintiff Failed to Plead Facts Showing He is a Qualified Individual within the Meaning of the ADA

The prohibition on discrimination based on a disability applies only to an "otherwise qualified individual." 29 U.S.C. § 794(a). A "[q]ualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Workplace attendance is one such essential function. *See* Rios-Jimenez v. Principi, 520 F.3d 31, 42 (1st Cir. 2008). Frequent absences from work and extended periods of leave preclude plaintiffs from establishing they are qualified individuals. *See* Castro-Medina v. Procter & Gamble Com. Co., 565 F. Supp. 2d 343, 370 (D.P.R. 2008) (concluding that a plaintiff who missed work for months at a time was not a qualified individual within the meaning of the ADA); Rios-Jimenez, 520 F.3d at 41-42 (same, as to plaintiff who "frequently missed work").

Plaintiff argues in the *Response* that his advancement from "Appraiser II to Appraiser IV without any other further reasonable accommodations than the psychiatric and psychological treatment for his known mental conditions," is evidence of his being a qualified individual as defined under the ADA. (Docket No. 22 at 7). However, as detailed in the *Amended Complaint*, Mr. Mojica took unpaid sick leave for one year when he "was unable to work due to his mental illness diagnosis" and was absent from November 4, 2021

to November 29, 2021 due to his hospitalization. (Docket No. 4 ¶¶ 13, 28-40). Frequent and significant absences, although due to a disability, evince Plaintiff has failed to allege he was an otherwise qualified individual as required to establish a claim under the ADA.

### iii. Plaintiff Failed to Plead Facts Plausibly Showing Defendant Took Adverse Action Against Him because of His Disability

Even if Mr. Mojica had adequately pleaded he was a qualified individual, the *Amended Complaint* does not allege sufficient facts establishing CRIM discriminated against him because of his disability. Plaintiff states the discriminatory action against him consisted of "submitting him to multiple psychological and psychiatric evaluation[s] right after the filing of the Sexual Harassment complaint against Ms. Stephanie López-Aponte (harasser)." (Docket No. 4 ¶ 79(c)).

The third and final element a plaintiff must plead in a disability discrimination claim is that the employer "took adverse action against him, in whole, or in part, because of his disability." Arroyo-Ruiz v. Triple-S Mgmt. Grp., 206 F. Supp. 3d 701, 714 (D.P.R. 2016) (citing Roman-Oliveras, 655 F.3d at 48). "To be adverse, an action must materially change the conditions of plaintiffs' employ." Gu v. Boston Police Dept., 312, F.3d 6, 14 (1st Cir. 2002) (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)). In the First Circuit, "[m]aterial changes include

'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Gu, 312 F.3d at 14 (citing Hernandez-Torres v. Intercont'l Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). Notably, psychological or psychiatric evaluations are not in and of themselves a form of adverse material action against an employee in the context of an ADA claim. *See* Lopez-Lopez v. Robinson School, 958 F.3d 96, 105 (1st Cir. 2020) (holding there were non-discriminatory reasons for requesting an employee to submit to a psychological examination when her nervous breakdown prevented her from performing work duties). Mr. Mojica makes no claim that his employment condition was materially changed by the requirement he undergo the evaluations, and accordingly he cannot establish that an adverse action was taken against him. Accordingly, Defendant's *Motion to Dismiss* as to this claim is **GRANTED.**

**D. Plaintiff Failed to Adequately Plead a Claim Under Puerto Rico Law 44**

Puerto Rico Law 44, or the Disability Discrimination Statute, prohibits discrimination by public or private institutions offering "programs, activities, benefits, services or facilities" to the public against "persons with some type of physical or mental disability." 1 L.P.R.A. § 504. "[T]he elements of proof for a claim under Law 44 are essentially the same as for a claim under the

ADA." <u>Velez Nieves v. Microsoft Caribbean, Inc.</u>, 2006 WL 1805689, at *9 (D.P.R. 2006) (citing <u>Roman-Martinez v. Delta Maint. Serv., Inc.</u>, 229 F. Supp. 2d 79, 85 (D.P.R. 2002); <u>Zayas v. Puerto Rico</u>, 378 F. Supp. 2d 13, 23-24 (D.P.R. 2005)). Accordingly, since Plaintiff has failed to establish a claim under the ADA, as determined above, he has similarly failed to adequately plead a claim under Law 44. Defendant's *Motion to Dismiss* as to this claim is therefore **GRANTED**.

### E. Law 100 Does not Apply to CRIM

Law 100 is a Puerto Rico statute imposing civil liability on an employer who:

> discharges, lays off, or discriminates against an employee" based on "age,. . .race, color, sex, sexual orientation, gender identity, social or national origin, social condition, political affiliation, or political or religious beliefs of the employee or job applicant, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking, or being a servicemember, ex-servicemember, serving or having served in the United States Armed Forces or holding veteran status.

29 L.P.R.A. § 146. As relevant to this case, Law 100 does not apply to non-profit government instrumentalities, but rather to "agencies or instrumentalities of the Government of Puerto Rico [that] operat[e] as private businesses or enterprises." <u>Huertas-Gonzalez v. Univ. of P.R.</u>, 520 F. Supp. 2d 304, 314 (D.P.R. 2007) (citing <u>Rodriguez Cruz v. Padilla Ayala</u>, 125 D.P.R. 486, 508

(1990)); *see also* 29 L.P.R.A. § 151(2) ("Employer. . . shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises.").

CRIM is the only named defendant, and Plaintiff claims that it is subject to Law 100 because "CRIM is a separate entity from the municipalities," and "recruit[s] it[s] own personnel, meaning that it operates as an employer as define[d] by Law No. 100." (Docket No. 22 at 10-11). However, courts in this district have previously identified CRIM as "an instrumentality of the Puerto Rico government." Fin. of Am. Reverse LLC v. Almodovar-Giueroa, 2017 WL 2656108, at *3 (D.P.R. 2017) (quoting Plaza Las Americas, Inc. v. Centro de Recaudacion de Ingresos Municipales, 173 D.P.R. 230, 240 (D.P.R. 2008)). Additionally, 21 L.P.R. § 5802 defines CRIM as a "municipal entity, independent and separate from any other agency or instrumentality of the Government of the Commonwealth of Puerto Rico. . . [CRIM] is the fiscal services entity whose primary responsibility shall be to collect, receive and allocate the public funds arising from the sources indicated in this chapter and which correspond to the municipalities." CRIM's employees are protected by the guarantees of the Puerto Rico Personnel Law, and the Puerto Rico Supreme Court has held "because of both its eminently public purposes and its essential budgetary dependence, the CRIM, as an institution, is **similar to a typical**

**government agency.**" (Docket No. 25-2 at 2) (quoting and translating

Plaza Las Americas, Inc., 173 D.P.R. at 975-977) (emphasis added).

Plaintiff did not allege in his *Amended Complaint* that CRIM

operates as a private business or enterprise, only stating

Defendant "is a municipal agency . . . independent and separate

from any other from any other . . . agency or instrumentality of

the Commonwealth of Puerto Rico, that has the capacity to sue, be

sued and do business in this jurisdiction." (Docket No. 4 ¶ 5). In

his *Response*, Plaintiff further describes CRIM as:

> a creature of the State at the service of the
> Municipalities. Its main purpose is to render
> fiscal services for municipalities and is
> responsible for notifying, assessing,
> collecting, receiving, and distributing
> public funds from property taxes, state
> subsidies, funds from the electronic lottery,
> and any other funds provided by law for P.R.
> municipalities.

(Docket No. 22 at 8). These statements do not adequately allege

that CRIM is the sort of government entity that operates as a

private business and would therefore be subject to Law No. 100.

Accordingly, the *Motion to Dismiss* is **GRANTED** as to the Law 100

claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant Centro de Recaudaciones

de Impuestos Municipales' *Motion to Dismiss Under Rule 12(b)(6)* at

Docket No. 17 is hereby **GRANTED**. Plaintiff's causes of action

pursuant to the ADA, Puerto Rico Law 44, Section 1983 of the Civil

Civil No. 23-1309 (RAM)                                                    23

Rights Act (referring to the Due Process Clause and Equal Protection Clause), and Law No. 100 are **DISMISSED.** The Title VII, Law No. 115, and Law No. 69 claims remain pending.

  **IT IS SO ORDERED.**

  In San Juan, Puerto Rico, this 18th day of July 2024.

                                s/Raúl M. Arias-Marxuach
                                UNITED STATES DISTRICT JUDGE